UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, *Plaintiff*, v. CE SECURITY LLC, CONCORD LIMOUSINE 1 LLC, and ALEXANDER GAVRILOV, as an individual, *Defendants*. | Complaint<br><br>Civil Action No.  21-cv-57 |

## **INTRODUCTION**

Plaintiff, Eugene Scalia, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq*.) ("the Act" or "the FLSA"), alleging that Defendants CE Security LLC and Concord Limousine 1 LLC (collectively, the "Corporate Defendants"),  and individual Defendant Alexander Gavrilov violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act; to recover back wages and liquidated damages; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

Defendants collectively provide "spotholding" services to the Consolidated Edison Company of New York, Inc. ("ConEd"), which requires Defendants' employees, known as "spotholders" to drive to various of ConEd's worksites around the City of New York to place cones in parking spaces as they come available and other locations to make and maintain space for ConEd's work activities at the worksites.

The Corporate Defendants, operating together as an employer of the spotholders, along with individual Defendant Alexander Gavrilov, purposely and actively attempted to misclassify their spotholder employees as independent contractors in a bid to flaunt the FLSA and to avoid paying them required overtime premiums for long hours worked each week. Defendants exert enormous control over the work performed by their spotholder employees for work that at once requires very little skill to perform and offers no real opportunity for increased profit through managerial skill. Indeed, Defendants typically pay their spotholder employees a flat $13.50 per hour (i.e. an hourly wage no different than that of a typical employee) for all hours worked even where the spotholders work more than 40 hours per workweek, which they regularly do.

Through instituting this scheme to avoid their legal obligations, from at least January 5, 2018 through the present ("the relevant time period") Defendants have repeatedly violated the FLSA by failing to pay hundreds of misclassified employees the required overtime premiums to which they are entitled under the law. In furtherance of their scheme, Defendants failed to maintain adequate and accurate records of hours worked.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the United States District Court for the Eastern District of New York because a substantial part of the events and/or omissions giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b)(2).

# FACTUAL ALLEGATIONS

## The Parties
*Plaintiff*

3. Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages and is the proper plaintiff for this action.

*The Corporate Defendants*

4. Defendant CE Security LLC ("CE Security") is a company organized under the laws of the State of New York, having its principal office at 712 Third Avenue, Brooklyn, New York 11232.

5. Defendant Concord Limousine 1 LLC ("Concord") is a company organized under the laws of the State of New York, having its principal office at 712 Third Avenue, Brooklyn, New York 11232.

6. These two companies, collectively, are the "Corporate Defendants."

*Individual Defendant*

7. Alexander Gavrilov, an individual, is the sole member of Concord.

8. Alexander Gavrilov is the sole member-manager of Concord.

9. Alexander Gavrilov maintains a place of residence at 2615 S. Tenaya Way, Las Vegas, NV 89117.

10. Alexander Gavrilov is the sole member having ownership interest in Concord.

11. Concord in turn is the sole member having ownership interest in CE Security.

12. Alexander Gavrilov shares in 100 percent of the profits and losses of Concord.

13. Alexander Gavrilov is President of CE Security.

14. Alexander Gavrilov initially organized both Corporate Defendants.

15. Alexander Gavrilov owns the property where the Corporate Defendants are headquartered and staff their operations.

16. The address for New York Department of State Process for each of the Corporate Defendants is a building owned by Alexander Gavrilov.

17. Alexander Gavrilov has the authority to hire employees, including spotholders, for CE Security.

18. Alexander Gavrilov has the authority to hire employees, including spotholders, for Concord.

19. Alexander Gavrilov has the authority to fire employees, including spotholders, for CE Security.

20. Alexander Gavrilov has the authority to fire employees, including spotholders, for Concord.

21. Alexander Gavrilov has the authority to set wages for the employees, including spotholders, for CE Security.

22. Alexander Gavrilov has the authority to set wages for the employees, including spotholders, for Concord.

23. Alexander Gavrilov participates in the day-to-day operations of Concord.

24. Alexander Gavrilov participates in the day-to-day operations of CE Security.

25. Alexander Gavrilov was in active control and management of the Corporate Defendants for all times relevant to the complaint.

26. Alexander Gavrilov is an employer of the Corporate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

## The Corporate Defendants Operate as a Single, Integrated Employer

*The Corporate Defendants Jointly and Collectively Employ the Spotholders*

27. The Corporate Defendants are each in the business of providing spotholding and related services.

28. The Corporate Defendants each provide spotholding and related services to ConEd.

29. The spotholding and related services CE Security provides to ConEd encompass the entirety or near entirety of its business.

30. The spotholding and related services Concord provides to ConEd encompass the entirety or near entirety of its business.

31. The Corporate Defendants share the same Brooklyn address where they conduct their business.

32. The Corporate Defendants share the same or similar administrative staff including bookkeepers, in-house legal counsel, and accounts managers who perform services for each Corporate Defendant.

33. Employees, such as dispatchers, are routinely shifted from one Corporate Defendant to the other or otherwise perform work for both Corporate Defendants.

34. From at least 2016 through the present Concord signed multiple contracts with ConEd to perform spotholding and related services.

35. CE Security is not party to any contract with ConEd from at least 2016 through the present.

36. CE Security nonetheless performs work on Concord's contracts with ConEd.

37. Concord performs work on Concord's contracts with ConEd.

38. From at least 2016 through the present, spotholders signed written agreements with either CE Security or Concord to provide spotholding and related services under the contracts Concord entered into with ConEd.

39. Individuals who signed the written agreements with CE Security or Concord performed work under the contracts Concord entered into with ConEd without regard to which Corporate Defendant they agreed to provide services to.

40. When assigning work to spotholders under the contracts with ConEd, the Corporate Defendants did not distinguish spotholders or their assignments based upon which of the two companies spotholders signed written agreements with.

41. Spotholders for each Corporate Defendant were required to complete "ConEd Reserve Parking Site Location Sign Off Sheets" under "Concord Limousine 1, LLC" letterhead.

42. The Corporate Defendants routinely transfer funds into and out of each other's bank accounts.

43. CE Security ultimately pays the spotholders out of funds ConEd pays to Concord under Concord's contracts with ConEd.

44. The Corporate Defendants share common and interrelated operations.

45. Together, the two Corporate Defendants employ the spotholders.

*The Corporate Defendants Are an Enterprise Engaged in Commerce within the Meaning of the Act*

46. Together, the Corporate Defendants are an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

47. The Corporate Defendants' business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

48. The Corporate Defendants engage in the business of providing spotholding services to ConEd.

49. In pursuing this common business purpose, each Corporate Defendants engage in substantially similar, if not identical, business activities.

50. The Corporate Defendants' business activities are performed under common control.

51. The Corporate Defendants have unified operations.

52. The Corporate Defendants employ the spotholders listed in Exhibit A, as well as other employees not presently known to the Plaintiff, in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including the handling of, selling of, or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to automobiles, computers, and Android-powered smart phones.

53. At all times relevant to this Complaint, CE Security had an annual gross volume of sales made or business done in an amount not less than $500,000.

54. At all times relevant to this Complaint, Concord had an annual gross volume of sales made or business done in an amount not less than $500,000.

55. At all times relevant to this Complaint, CE Security and Concord together had a combined annual gross volume of sales made or business done in an amount not less than $500,000.

56. Therefore, the Corporate Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

57. CE Security LLC and Concord Limousine 1 LLC collectively employ the spotholders that perform the work on ConEd's worksites across New York City including in Brooklyn, Manhattan, Queens, and Staten Island.

58. Together with Alexander Gavrilov, the Corporate Defendants are an employer of the Corporate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

### Defendants' Prohibited Pay Practices

*Defendants Underpaid their Spotholder Employees by Misclassifying them as Independent Contractors in a Bid to Avoid Paying them the Required Premium for Overtime Hours Worked*

59. Since at least January 5, 2018 through the present, Defendants have misclassified their spotholder employees, including but not limited to, those listed on Exhibit A, as independent contractors in a scheme designed to avoid paying overtime premiums for spotholders' long hours worked.

60. Defendants exercised extensive control over the manner and means through which the spotholders performed their work during the relevant time period.

61. Defendants control the day-to-day conditions of work of the spotholders.

62. Defendants require spotholders to sign form contracts with one or more Defendants.

63. Spotholders have no ability to negotiate the terms of the form contracts provided by Defendants.

64. Defendants may suspend or terminate spotholders for violations of the terms of the form contracts.

65. Defendants assign spotholders specific ConEd worksites they are to work.

66. Spotholders receive emails or texts for work assignments the day of or the day before the scheduled work.

67. Upon information and belief, spotholders were not able to choose which assignments they received.

68. Spotholders could be suspended or terminated for refusing work assignments.

69. Spotholders typically did not work for any other employers.

70. Defendants set the schedules for spotholders, determining the start time of each shift.

71. Defendants typically require spotholders to work 12-hour shifts on assigned ConEd worksites.

72. Defendants require spotholders to inform Defendants when they arrive to the worksite.

73. Defendants require the spotholders to document their arrival through photographs they then require spotholders to send to Defendants to prove they are at the worksite.

74. Defendants require spotholders to obtain approval from Defendants before leaving a worksite, even to take a short break.

75. Spotholders may only relieve themselves for another spotholder after obtaining permission from Defendants.

76. Defendants determined the spotholders' compensation by setting their hourly rates.

77. Defendants pay a flat hourly rate to spotholders, regardless of hours worked.

78. Spotholders may not and do not negotiate their hourly rates.

79. Spotholders have no opportunity to increase their profits or to take loss based upon their managerial skill.

80. Spotholders must remain at each worksite until ConEd completes its work.

81. Spotholding does not require any special skill or specialized education.

82. Spotholders made little or no investment in the equipment or materials required for their work.

83. The only tools required to perform spotholding work are an automobile, cones, a safety vest, a hard had, safety gloves, and a flashlight.

84. Defendants' relationship with the spotholders are for indefinite periods of time and often last years.

85. The spotholders are as a matter of economic reality "employees" of Defendants within the meaning of Section 3(e)(1) of the Act, 29 U.S.C. § 203(e)(1).

*Defendants failed to pay spotholders an overtime premium for hours worked over 40 per week*

86. For the entire relevant time period, Defendants paid the spotholders listed on Exhibit A, as well as others currently unknown, a flat hourly rate for every hour worked, including for hours worked more than 40 hours per week.

87. In so doing, Defendants did not pay an overtime premium to spotholders for hours worked more than 40 per week.

88. Defendants' spotholders regularly worked more than 40 hours per week, often working 48 to 72 hours per week, if not more.

89. For example, according to Defendants' records, one spotholder worked 64 hours during the week ending February 15, 2020, for which he was paid the regular hourly rate of $13.50 for all hours worked, including all hours worked over 40 for a total of $864.00.

90. By way of further example, according to Defendants' records, another spotholder worked 78.50 hours during the week ending August 3, 2019, for which he was paid the regular hourly rate of $13.50 for all hours worked, including all hours worked over 40 for a total of $1,059.75.

91. By way of further example, according to Defendants' records, another spotholder worked 84 hours during the week ending November 9, 2019, for which he was paid the regular hourly rate of $13.50 for all hours worked, including all hours worked over 40 for a total of $1,134.00.

92. Defendants underpaid the spotholders listed on Exhibit A each and every week during the relevant time period that they worked in excess of forty hours, by paying a flat hourly rate, without any overtime premium, regardless of the amount of hours worked in excess of forty hours in a workweek.

93. In all, Defendants failed to compensate at least 292 current and former employees during the relevant time period for work performed in workweeks longer than forty hours at a rate not less than one and one-half times the regular rate at which they were employed, as required by the Act.

### Defendants' Record Keeping Practices

94. During the relevant time period, Defendants have failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

95. Defendants did not create or maintain adequate and accurate records of the total regular and overtime hours employees worked each workday.

96. Defendants did not create or maintain adequate and accurate records of the total regular and overtime hours that employees worked each week.

97. Defendants did not create or maintain adequate and accurate records of total hours employees worked each workweek.

## Tolling Agreement

98. On or about July 27, 2020, CE Security, through Alexander Gavrilov, in his capacity as President for CE Security, and Alexander Gavrilov as an individual and the Secretary, through the United States Wage and Hour Division, knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement tolling the applicable statute of limitations from January 5, 2020 until and including December 31, 2020.

99. Accordingly, the Act's statute of limitations, as applied to all Defendants, shall be tolled from January 5, 2020 until and including December 31, 2020.

## FIRST CAUSE OF ACTION

**Violation of Sections 7(a) and 15(a)(2) of the FLSA, Failure to Pay Overtime**

100. The Secretary incorporates by reference and realleges the allegations in paragraphs 1 through 99.

101. From at least January 5, 2018 through the present, Defendants have repeatedly violated Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than forty hours without compensating the employees at a rate not less than one and one-half the regular rate at which they were employed.

102. Accordingly, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages pursuant to Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest on said unpaid overtime compensation under Section 17 of the Act.

## SECOND CAUSE OF ACTION

### Violation of Sections 11(c) and 15(a)(5) of the FLSA, Recordkeeping

103. The Secretary incorporates by reference and realleges the allegations in paragraphs 1 through 102.

104. From at least January 5, 2018 through the present Defendants have repeatedly violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and/or preserve adequate and accurate records, including regular hourly rate of pay and total premium pay for overtime hours, as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

## RELIEF REQUESTED

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants providing the following relief:

(1) An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

(2) An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime compensation found due Defendants' employees listed on the attached Exhibit A;

(3) An order pursuant to Section 16(c) of the Act finding Defendants liable for an equal amount of liquidated damages (additional overtime compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or in the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

(4) An order compelling Defendants to reimburse the Secretary for the costs of this action; and

(5) An order granting such other relief as the Court may deem necessary or appropriate.

DATED:   January 5, 2021
         New York, New York

                                                                                                    KATE S. O'SCANNLAIN
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

s/ David J. Rutenberg
DAVID J. RUTENBERG
Trial Attorney

U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel: 646.264.3686
Fax: 646.264.3660
Rutenberg.david.j@dol.gov
NY-SOL-ECF@dol.gov

Attorneys for Plaintiff Secretary of Labor
Eugene Scalia

Certificate of Service

I certify that on January 5, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and further certify that I have e-mailed the foregoing to:

>Harvey S. Mars, Esq.
>Law Offices of Harvey S. Mars LLC
>322 48th Street, 6th Floor
>New York, NY 10036
>hsmlaborlaw@harveymarsattorney.com

>s/David J. Rutenberg
>David J. Rutenberg