UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
**EUGENE SCALIA**, Secretary of Labor,
United States Department of Labor
:
: **MEMORANDUM DECISION AND ORDER**
Plaintiff,
: 21-CV-00057 (AMD) (RLM)
:
– against –
:
:
**CE SECURITY LLC, CONCORD LIMOUSINE 1 LLC,** and **ALEXANDER GAVRILOV**, as an individual,
:
:
:
Defendants.
:
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On January 5, 2021 the plaintiff filed a complaint against the defendants for alleged violations of the Fair Labor Standards Act ("FLSA"). On February 17, 2021, the defendants moved to compel arbitration based on agreements that they, the defendants, had with certain other individuals. For the reasons explained below, I deny the defendants' motion to compel arbitration.

## BACKGROUND

On January 5, 2021, the plaintiff sued the defendants pursuant to Sections 16(c) and 17 of the FLSA for failing to pay overtime, and for failing to maintain adequate and accurate records, in violation Sections 7(a) and 15(a)(2), as well as Sections 11(c) and 15(a)(5), of the FLSA, respectively. (ECF No. 1 at 1, 12-13.) The plaintiff seeks to recover back wages and liquidated damages, to enjoin acts and practices that violate the FLSA, and to obtain other appropriate relief. (*Id.* at 1.)

According to the complaint, the defendants—two New York companies and the individual who effectively owns and controls both companies, (*id.* at 3-4)—collectively provide "spotholding" services for the Consolidated Edison Company of New York, Inc. ("Con Ed"), (*id.* at 1). Spotholders drive to ConEd worksites around New York City and put cones in parking spaces and other locations "to make and maintain space" for ConEd's work activities. (*Id.*)

The complaint alleges that for at least the past three years, the defendants "purposely and actively attempted to misclassify their spotholder employees as independent contractors" to avoid the FLSA and the obligation to pay required overtime premiums. (*Id.* at 2.) As a result, the defendants did not pay at least 292 current and former employees as required under the FLSA. (*Id.* at 11.) Nor did the defendants maintain adequate and accurate records of hours worked, as is required by the FLSA. (*Id.* at 2, 11-12.)

On February 17, 2021, the defendants moved to compel arbitration of the plaintiff's claims and to stay proceedings pending the arbitration. (ECF No. 11 at 1-2.) According to the defendants, the employees at issue—whom the defendants call independent contractors—entered into the following "Con Edison Sub Contractors" agreement that requires arbitration for disputes like these:

> The location or venue of any dispute between [the defendant] Security and the [Con Edison] sub contractor will be in New York City, New York and the parties agree to submit such dispute for resolution to the American Arbitration Association ("AAA"). The parties waive submitting resolution of disputes between them to the Courts of New York or any other judicial system. The parties are limited to resolution of disputes between them only by the AAA.

The defendants say that the plaintiff is bound by the agreement.

## LEGAL STANDARD

Motions to compel arbitration are evaluated under a standard similar to the standard for summary judgment motions. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)

(quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). The court must "consider all relevant admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Faggiano v. CVS Pharm*, Inc., 283 F.Supp.3d 33, 35 (E.D.N.Y. 2017). If a dispute's arbitrability can be decided as a matter of law based on undisputed facts in the record, the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opp. Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (quoting *Bensadoun*, 316 F.3d at 175). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

The Federal Arbitration Act ("FAA") covers arbitration provisions contained in employment contracts and arbitration agreements, including the one here. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001); *Sinnett v. Friendly Ice Cream Corp.,* 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004). The FAA provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and establishes a "liberal federal policy favoring arbitration agreements," *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").

To determine under the FAA whether all or part of an action should be submitted to arbitration, the court should consider (1) whether the parties agreed to arbitrate, (2) the scope of the arbitration agreement, and (3) if federal statutory claims are asserted, whether Congress

3

intended those claims to be nonarbitrable. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). If some, but not all, of the claims in the case are arbitrable, the court must consider whether to stay the balance of the proceedings pending arbitration. *Id.*

## DISCUSSION

The defendants argue that the existence of the arbitration agreement with the spotholders also binds the plaintiff. (ECF No. 11-3 at 8.) The plaintiff responds that it is "indisputably a non-party" to any such agreement. (ECF No. 12 at 3.)

Although federal policy favors arbitration, "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986). "Arbitration is strictly a matter of consent," and courts may only compel arbitration of "*only those disputes*" "that the parties have agreed to submit" to arbitration. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted). The Supreme Court "ha[s] often observed that the [Federal] Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation marks omitted) (citing *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013)).

Nothing in the Con Edison Sub Contractors agreement covers the heads of government agencies, like the plaintiff. On the contrary, each agreement is between the defendant CE Security LLC and an individual spotholder. (ECF Nos. 11-2, 13-1.) Nor is there any merit to the defendant's theory that the plaintiff is bound by an agreement that it did not negotiate or sign, because it "act[s] on behalf" of the spotholders. (ECF No. 11-3 at 6.) While a nonsignatory can be bound to an arbitration agreement under traditional principles of agency law, *see MidOil USA, LLC v. Astra Project Fin. Pty Ltd.*, 594 F. App'x 48, 49 (2d Cir. 2015) (summary order),

"[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act," *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (quoting Restatement (Second) of Agency § 1 (1958)). There is no evidence of a consensual agreement between the spotholders and the plaintiff.

In *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), the EEOC filed an enforcement action against an employer for violations of the Americans with Disabilities Act, *id.* at 283; the employer argued that the EEOC was bound by an arbitration agreement with the employees, but the Court held that the EEOC was "the master of its own case," *id.* at 291. The Second Circuit, applying *Waffle House*, has observed that "agreements of private parties cannot frustrate the power of a federal agency to pursue the public's interests in litigation." *Cohen v. Viray*, 622 F.3d 188, 195 (2d Cir. 2010). The same reasoning applies here. The FLSA authorizes the plaintiff to bring actions to recover "overtime compensation" and "liquidated damages," 29 U.S.C. § 216(c), and to enjoin unlawful practices that violate the FLSA, *id.* § 217, without requiring an employee's consent. *See, e.g.*, *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) ("[T]he purposes of the [Fair Labor Standards] Act require that it be applied even to those who would decline its protections."). Like the EEOC in *Waffle House*, the plaintiff is not party to the relevant arbitration agreements. (ECF Nos. 11-2, 13-1.) Also like the EEOC, which the Court found "may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee," *Waffle House*, 534 U.S. at 296, the plaintiff here "may still have interests independent of the aggrieved employee when seeking employee-specific relief, including deterring other employers from violating the FLSA and protecting complying

5

employers from unfair wage competition with noncomplying employers." *Walsh v. Ariz. Logistics*, 998 F.3d 393, 396 (9th Cir. 2021).

## CONCLUSION

For these reasons, the defendants' motion to compel arbitration is denied.

**SO ORDERED.**

                                                                                 s/Ann M. Donnelly
                                                           ANN M. DONNELLY
                                                           United States District Judge

Dated: Brooklyn, New York
          August 25, 2021